```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
LYNN NAJMAN and LEE NAJMAN,
                    Plaintiffs

       -against-                           MEMORANDUM & ORDER
                                           19-CV-5811 (JS)(SIL)
VILLAGE OF SANDS POINT, NEW YORK,

                    Defendant.
-----------------------------------X
APPEARANCES
For Plaintiffs:       Richard Bruce Rosenthal, Esq.
                      120-82 Queens Blvd.
                      Kew Gardens, New York 11415

                      Thompson Gould Page, Esq.
                      Law Offices of Thompson Gould Page, LLC
                      1 Linden Place, Suite 108
                      Hartford, Connecticut 06106

                      Michela Huth, Esq.
                      P.O. Box 17
                      Bolivar, Ohio 44612

For Defendant:        Matthew J. Bizzaro, Esq.
                      L'Abbate, Balkan, Colavita & Contini, L.L.P.
                      1001 Franklin Avenue
                      Garden City, New York 11530
```

SEYBERT, District Judge:

Defendant Village of Sands Point, New York (the "Defendant" or "Village") moves to dismiss the Complaint of Lynn and Lee Najman (the "Plaintiffs" or "Najmans") wherein they allege their due process rights under the Fourteenth Amendment have been violated by the Village because they are being subjected to a dangerous dog hearing for purportedly violating Village of Sands Point Ordinance § 72-9, the so-called "Dangerous Dog Ordinance."

(See Mot. Dismiss, ECF No. 19 (hereafter, "Dismissal Motion");
Complaint, ECF No. 1, ¶¶1, 9.)  Plaintiffs oppose the Dismissal
Motion.  (See Opp'n, ECF No. 23.)  For the reasons stated herein,
the Dismissal Motion is GRANTED.

<u>BACKGROUND</u>

On September 13, 2019, Plaintiff Lynn Najman ("Lynn"),
a resident of the Village, was walking her dog, Dakota, at Bridle
Path North in Sands Point.  (See Compl., ¶¶7, 9.)  The Najmans'
dog allegedly broke free from its lease and attacked and bit
another dog multiple times, causing injury and pain to the other
dog.  (See id., ¶¶10, 11.)

On September 20, 2019, Police Officer James Schanker
issued a "COURT INFORMATION" numbered "7076" to Lynn directing her
appearance at the Village Justice Court of Sands Point "TO ANSWER
A CHARGE IN VIOATION OF" Section 72-9 of "SPVC"[1] regarding the
specific charge of a "dangerous dog."  (Ex. A, ECF No. 1 at 15
(hereafter, the "Court Information"), <u>attached to</u> Compl.)  Under
the section of the Court Information that read "I observed the
defendant at the stated place, date, time", Officer Schanker wrote,
verbatim: "Defendants dog did break free from leash And did Attack
And bite complainants [<u>sic</u>] Dog caused severe injuries and pain".
(<u>Id.</u>)

---

[1]  The Court presumes this is an acronym for the "Sands Point
Village Code".

On September 22, 2019, complainant Cori Finkelstein executed an "Accusatory Instrument for Village Code Violation" against the Najmans, attesting upon personal knowledge that the Najmans "committed the following violation(s) of the Code of the Village of Sands Point in that [they] did wrongfully, intentionally, knowingly, recklessly, with criminal negligence, commit the offense of: 72-8/9 Dangerous Dog."  (Ex. B, ECF No. 1 at 17 (hereafter, the "Dog Complaint"), attached to Compl.)

On September 25, 2019, Village Justice Alyson K. Adler (hereafter, "Justice Adler") issued a hearing order directing the Najmans' appearance on October 2, 2019 "for a dangerous dog hearing pursuant to Village Code 72-8(B)[2] & 72-9(E)(8) and Section 123(2) of the New York State Agriculture and Markets Law."  (Ex. 3, ECF No. 20-3 (hereafter, the "Hearing Order"), attached to Bizzaro Supp. Decl., ECF No. 20.)  The Hearing Order referenced "Ticket 7076" and listed September 13, 2019 as the "Viol. Date" and September 22, 2019 as the "Complaint Date".

---

[2] Section 72-8(B) of the Village Code states:

> Any person observing a violation of any section of this article may personally appear at the Village Police Department and report such violation. Said person may also sign and swear to the appropriate accusatory instrument as required by law and thereby commence prosecution of the alleged violator."

At the October 2, 2019 dangerous dog hearing (hereafter, the "Dangerous Dog Hearing"), among other things, the parties requested a two-week adjournment, which was conditioned upon the Najmans consenting to certain conditions, including, <u>inter</u> <u>alia</u>: "provid[ing] the Village with proof that Dakota . . . has been spayed or neutered, microchipped, and provid[ing] the Village with the registration of such chip;" "provid[ing] the Village with the name of a trainer that is working with . . . Dakota, and continu[ing] to work with [Dakota] pending the next adjourn date;" when outside the Defendants' home, but not on public property, keeping Dakota muzzled, enclosed in a fenced and locked yard, on a leash or tether, and in the company of an adult over the age of twenty-one years old; having Dakota "restrained on a leash by an adult at least twenty-one years of age and capable of controlling the dog" whenever on public premises; and, "anytime that Dakota is outside of the [Najmans'] home, [having] Dakota . . . muzzled in a manner that will prevent it from biting any person or animal . . . ." (hereafter, the "Restriction Conditions"). (Ex. 4, ECF No. 20-4 (hereafter, the "Dog Hr'g Tr.") at 3:2-6:2, <u>attached to</u> Bizzaro Supp. Decl.)   Upon the Najmans consenting to said Restriction Conditions, which Justice Adler accepted, the requested two-week adjournment was granted.   (<u>See</u> <u>id.</u> at 6:4-9.) Of relevance, in adjourning the Dangerous Dog Hearing, Justice Adler stated:

> [T]he Court's job is to protect the Village
> and the Village's residents and the Village's
> dogs and children from a dangerous dog.  This
> is not a finding of a dangerous dog yet,
> because we have not had the hearing, but I
> want you to be aware that this is a serious
> situation, a very serious situation, and my
> job is to protect the Village and its
> residents.

(Id. at 8:4-15 (emphasis added).)   Nowhere during the Dangerous

Dog Hearing did the Plaintiffs challenge the constitutionality of

Village Ordinance § 72-9.   (See id., in toto.)

On October 15, 2019, two days prior to the adjourned

Dangerous Dog Hearing, Plaintiffs commenced this action seeking,

inter alia, injunctive and declaratory relief.  (See Compl. at 4-

5.)   Concomitantly, Plaintiffs sought approval of a consensual

temporary restraining order ("TRO") pursuant to which the Village

agreed to being temporarily enjoined from prosecuting Plaintiffs

under Village Ordinance § 72-9 and the Plaintiffs agreed to being

bound to substantially the same Restriction Conditions consented

to during the Dangerous Dog Hearing.   (See ECF No. 3; see also

Support Memo, ECF No. 4.)   After hearing the parties on October

15, the Court entered the requested TRO. (See ECF No. 6[3]).

Subsequently, the Village was directed to respond to Plaintiffs'

motion seeking a preliminary injunction.   (See Case Docket, Oct.

17, 2019 Elec. ORDER.)

---

[3]   Judge Azrack, as miscellaneous duty judge, entered the TRO.

After several extensions,[4] on May 29, 2020, the Village filed its response to Plaintiffs' preliminary injunction motion, arguing: Plaintiffs failed to demonstrate the requisite irreparable harm; Plaintiffs' claims lacked merit; Plaintiffs' action is barred pursuant to the Younger abstention doctrine; and, the manner in which the Dangerous Dog Hearing was commenced does not warrant the injunctive relief Plaintiffs seek. (See Response, ECF No. 13.)   The same day, the Village sought a pre-motion conference regarding the present Dismissal Motion, which conference was scheduled for June 16, 2020. (See ECF No. 14; see also June 2, 2020 Elec. ORDER.)   In addition to setting a briefing schedule on the Dismissal Motion, the Court denied Plaintiffs' request to file a reply to the Village's response to their preliminary injunction motion but without prejudice to incorporating their reply position into their response to the Village's Dismissal Motion.   (See Minute Entry, ECF No. 18.)

---

[4]   Four times, the Village requested its deadline to respond and to answer be extended, stating the parties were trying to settle their dispute; each requested extension was made with the consent of the Plaintiffs. (See ECF Nos. 7, 8, 9, and 10.)

DISCUSSION

I. Applicable Law

   A. Dismissal Standard

       A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (citations omitted).  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully."  Id. at 678; accord Wilson v. Merrill Lynch & Co., 671 F.3d 120, 128 (2d Cir. 2011).  While "'detailed factual allegations'" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555); see also Arista Records, LLC v. Doe 3, 604 F.3d 110, 119-20 (2d Cir. 2010)(discussing the Iqbal/Twombly pleading standard, which does not apply any "heightened" pleading standard, but does require "factual amplification [where] needed to render a claim plausible")(quoting Turkmen v. Ashcroft, 589 F.3d 542, 546 (2d Cir. 2009); further citation omitted).  Further, in deciding a Rule 12(b)(6) dismissal motion, a court must liberally construe

the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor or the Plaintiff. See Matson v. Bd. of Educ. of City Sch. Dist. of N.Y., 631 F.3d 57, 63 (2d Cir. 2011).

In deciding a motion pursuant to Rule 12(b)(6), the Court must limit itself to the facts alleged in the pleading, which are accepted as true; to matters of which judicial notice may be taken, such as publicly available agency documents, see, e.g., In re Frito-Lay N. Am., Inc. All Natural Litig., No. 12-MD-2413, 2013 WL 4647512, at * 4 (E.D.N.Y. Aug. 29, 2013) (citing cases); to any written instrument attached to the pleading as an exhibit pursuant to Rule 10(c); to statements or documents incorporated by reference in the pleadings; or to documents upon the terms and effect of which the pleading "relies heavily" and which are, thus, rendered "integral" thereto.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); see also Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230-31 (2d Cir. 2016); Smith v. Hogan, 794 F.3d 249, 254 (2d Cir. 2015); Tubbs v. Stony Brook Univ., No. 15-cv-517, 2016 WL 8650463, at * 4 (S.D.N.Y. Mar. 4, 2016).

B. *Younger* Abstention Doctrine

"Abstention is a judicially created doctrine born out of Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, which advances the notion that where 'a

federal equity court does have jurisdiction of a particular proceeding,' it may abstain from exercising that jurisdiction out of 'proper regard for the rightful independence of state governments in carrying out their domestic policy.'" Plotch v. Wells Fargo Bank, N.A., 413 F. Supp. 3d 129, 132 (E.D.N.Y. 2018) (quoting Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 724, 116 S. Ct. 1712 (1996)(internal quotation marks omitted)). In 2013, the Supreme Court "clarified that Younger abstention is triggered by only three categories of state court proceedings: (1) 'state criminal prosecutions'; (2) 'civil enforcement proceedings'; and (3) civil proceedings that 'implicate a State's interest in enforcing the orders and judgments of its courts.'" Mir v. Shah, 569 F. App'x 48, 50 (2d Cir. 2014)(quoting Sprint Comm'ns, Inc. v. Jacobs, 571 U.S. 69, 73, 134 S. Ct. 584, 588 (2013) (internal quotation marks omitted)); see also Disability Rights of N.Y. v. New York, 916 F.3d 129, 133 (2d Cir. 2019)("The Younger doctrine has been extended beyond ongoing criminal cases to include particular state civil proceedings akin to criminal prosecutions or that implicate a state's interest in enforcing the orders and judgments of its courts." (internal citations omitted)). Thus, "under the categorical approach outlined by Sprint, federal abstention requires a criminal proceeding, a civil enforcement proceeding, or a determination that a state court's ability to perform its judicial function would be otherwise impeded." Id.

Moreover, "[a]s further explained by the Second Circuit, the court should only abstain from exercising its subject-matter jurisdiction under the Younger abstention doctrine where it answers the following three questions affirmatively: (1) is there an ongoing state proceeding; (2) is an important state interest implicated; and (3) does the plaintiff have an avenue open for review of constitutional claims in the state court?"  Plotch, 413 F. Supp. 3d at 133 (citing Cecos Int'l, Inc. v. Jorling, 895 F.2d 66, 70 (2d. Cir. 1990)).

II.  The Present Case

Because "[d]angerous dogs are potentially hazardous to the community and its residents," the Village enacted Chapter 72 of its Village Code "to regulate the licensing, ownership, keeping, harboring, care, confinement and humane euthanasia of dogs with dangerous propensities in an effort to safeguard and promote the health, safety and welfare of the community and its residents." Village Code § 72-8(B)(emphasis added).  In its efforts to do so, upon receiving a complaint about the Plaintiffs' dog, Dakota, Justice Adler ordered the subject Dangerous Dog Hearing pursuant to, inter alia, Village Ordinance 72-9(E)(8), which addresses confinement and restraint of dangerous dogs and states in relevant part:

> The following regulations shall apply upon
> imposition of options by a court of competent

jurisdiction pursuant to § 123-2 of the Agricultural and Markets Law:

\*\*\*

(8)   Any person who witnesses an attack or threatened attack . . . may make a complaint of an attack or threatened attack upon a person, companion animal as defined in the New York State Agricultural and Markets Law . . . or a domestic animal as defined in the New York State Agricultural and Markets Law to a dog control officer or police officer of the Village of Sands Point.  Such officer shall immediately inform the complainant of his or her right to commence a proceeding as provided for in Subdivision 2 of § 123 of the New York State Agricultural and Markets Law, and if there is reason to believe the dog is a dangerous dog, the officer shall forthwith commence such proceeding himself or herself.

In turn, New York State Agricultural and Markets Law ("AML") §

123(2) states, in relevant part:

[1.]   Any person who witnesses an attack or threatened attack . . . may, and any dog control officer or police officer as provided in subdivision one of this section shall, make a complaint under oath or affirmation to any municipal judge or justice of such attack or threatened attack. [2.]  Thereupon, the judge or justice shall immediately determine if there is probable cause to believe the dog is a dangerous dog and, if so, shall issue an order to any dog control officer . . . or police officer directing such officer to immediately seize such dog and hold the same pending judicial determination as provided in this section.  [3.]  <u>Whether or not the judge or justice finds there is probable cause for such seizure, he or she shall, within five days and upon written notice of not less than two days to the owner of the dog, hold a hearing on the complaint.</u>  The petitioner shall have the burden at such hearing to prove the dog is a "dangerous dog" by clear and

> convinving evidence.  [4.]  If satisfied that
> the dog is a dangerous dog, the judge or
> justice shall then order neutering or spaying
> of the dog, microchipping of the dog and one
> or more [enumerated restrictive conditions] as
> deemed appropriate under the circumstances and
> as deemed necessary for the protection of the
> public . . . .

N.Y.S. A.M.L. § 123(2) (emphasis added).

Considering the facts and circumstances of this case, Younger abstention has been triggered and its application is appropriate.  First, Village Ordinance § 72-9 falls under one of the three "exceptional" categories identified in Sprint, 571 U.S. at 78, 134 S. Ct. 584, as it defines a civil enforcement proceeding that is akin to criminal prosecution.  Review of the Ordinance demonstrates that it is structured progressively, with its threshold application being a hearing pursuant to AML § 123(2) to determine whether the subject dog is dangerous and that determination being made upon a showing of "clear and convincing evidence"; only if it is determined that the subject dog is dangerous, are certain conditions then imposed to ensure the safety of the public, cf., e.g., Town of Webster v Batz, No. 2019/0099, -- N.Y.S.3d --, 2020 N.Y. Slip Op. 20358, 2020 WL 8024555, at *1 (N.Y. Cnty. Ct., Monroe Cnty. Dec. 15, 2020)(stating a "dog must first be classified as a 'dangerous dog' before a [c]ourt can consider whether any of the aggravating factors enumerated in subsection 3 of AML Section 123 apply"); assuming there are no

violations of the imposed conditions, no further action is required; however, if the imposed conditions are alleged to have been violated, then the dog owner is vulnerable to criminal prosecution.  See Village Ordinance § 72-9.  There is no dispute that the current stage of the proceeding in Village Court is the commencement of the threshold Dangerous Dog Hearing.  Such a hearing has been held to be "civil in nature".  People v. Jornov, 65 A.D.3d 363 (4th Dep't 2009)(finding dangerous dog proceeding pursuant to AML § 123(2) was "civil in nature" where defendant's dog had not previously been determined to be dangerous and, therefore, defendant was not facing misdemeanor charges).  Indeed, AML § 123's precursor, § 117 of the Farms and Markets Law, was held to be neither civil nor criminal, but "a special proceeding of a civil character and nothing else." Matter of Foote, 129 Misc. 2, 4, 221 N.Y.S. 302 (Cnty. Ct., Livingston Cnty. 1927). Holistically considering (1) the hybrid composition of Village Ordinance § 72-9, i.e., that its progressive enforcement may lead to one facing misdemeanor charges, and (2) that in this instance, the proceeding in Village Court is at the threshold stage where it is determined whether the subject dog is dangerous, warrants finding that the Ordinance is akin to a special proceeding and that it falls within the "civil enforcement proceeding" category to which the Younger abstention doctrine applies.  Indeed, Plaintiffs appear to concede that a dangerous dog hearing is a

"state civil special proceeding."   (Opp'n at 7; see also id. at 8

(recognizing that a dangerous dog proceeding pursuant to AML § 123

is a "special proceeding").)   The Court's conclusion on this issue

is buttressed by (1) the use of the "clear and convincing" standard

required at the dangerous dog hearing, a heavier burden of proof

than the more lenient "preponderance of evidence" standard

generally applied in civil actions, see generally In re Kelton

Motors, Inc., 130 B.R. 170, 174 (Bankr. D. Vt. 1991) ("In most

civil cases the standard applied is proof by a 'preponderance of

the evidence.'"); see also id. at 175 ("The reason for requiring

a heightened standard of proof in certain civil cases is embodied

in the Due Process clause of the Constitution.   The 'clear and

convincing evidence' standard is used, typically, in civil cases

where the defendant's private interests at stake are more

substantial than risk of monetary loss." (citing Addington v.

Texas, 441 U.S. 418, 424 (1979)), as well as (2) the recent

dangerous dog case, Batz, where a New York State County Court

stated that "[t]he definition of 'physical injury' in the AML is

identical to the definition of 'physical injury' in the Penal Law,"

2020 WL 8024555, at *1 (citing N.Y.S. Penal Law § 10.00[9]).

        Second, there is no dispute that at the time this action

was commenced the Dangerous Dog Hearing had commenced, but, upon

consent, was adjourned.   Said Hearing has been held in abeyance

since this action was commenced and the consensual TRO was entered.

Third, Ordinance § 72-9 implicates an important interest of the municipality, to wit, the mechanism for safeguarding and promoting the health, safety and welfare of the community and its residents from the hazards of dangerous dogs.  See Village Code, Chapter 72, § 72-8(B).  Justice Adler specifically raised this important interest at the Dangerous Dog Hearing, stating, inter alia, that: "the Court's job is to protect the Village and the Village's residents and the Village's dogs and children from a dangerous dog"; the allegation of a dangerous dog "is a serious situation, a very serious situation"; and, in conducting a dangerous dog hearing, her "job is to protect the Village and its residents."  (Dog Hr'g Tr. at 8:4-8, 8:12-15.)  Moreover, this important interest incorporates the state's interest in addressing dangerous dogs.  See N.Y.S. A.M.L. § 106 ("The purpose of this article is to provide for the licensing and identification of dogs, the control and protection of the dog population and the protection of persons, property, domestic animals and deer from dog attack and damage."); see also N.Y.S. A.M.L. § 107 ("Nothing contained in this article shall prevent a municipality from adopting its own program for the control of dangerous dogs; provided, however, that no such program shall be less stringent than this article, and no such program shall regulate such dogs in a manner that is specific as to breed. Notwithstanding the provisions of subdivision one of this section, this subdivision and sections one hundred twenty-

three, one hundred twenty-three-a and one hundred twenty-three-b
of this article shall apply to all municipalities including cities
of two million or more." (emphasis added)).  Further, as AML § 107
makes clear, while a municipality may adopt its own program, such
program  must  include  AML  §  123,  which,  among  other  things,
addresses  acting  in  a  manner  "as  deemed  necessary  for  the
protection of the public" if restrictive conditions are to be
imposed  upon  the  owner  of  a  dangerous  dog.   N.Y.S. A.M.L. §
123(2)(emphasis added).

Finally, Plaintiffs have not persuasively demonstrated
that  they  will  be  precluded  from  raising  their  constitutional
challenge in the Village Court, even though it is their burden to
do so.  See Spargo v. N.Y.S. Comm'n on Judicial Conduct, 351 F.3d
65, 78 (2d Cir. 2003) ("[U]nder Younger, it is the plaintiff's
burden to demonstrate that state remedies are inadequate, and
defendants need not establish that state law definitively permits
the interposition of constitutional claims."   (citing Middlesex
County Ethics Cmte. v. Garden State Bar Ass'n, 457 U.S. 423, 435–
36 (1982))); see also id. ("[T]o avoid abstention, plaintiffs must
demonstrate that state law bars the effective consideration of
their  constitutional  claims.")   Rather,  relying  upon  the
transcript of the Dangerous Dog Hearing, Plaintiffs argue that
"Justice Adler informed the parties that she would not entertain
the constitutional issues[.]"  (Opp'n at 22 (citing "Doc. No. 20-

4 at ___".) Not so; a thorough review of the entire transcript establishes the absence of any mention of constitutional issues, let alone Justice Adler informing the parties that she would not consider such issues. (Dog Hr'g Tr., in toto.) Moreover, when considering whether a plaintiff "ha[s] an avenue open for review of constitutional claims in the state court[,]" Plotch, 413 F. Supp. 3d at 133, federal courts are to refrain from "any presumption that the state courts will not safeguard federal constitutional rights." Middlesex County Ethics Cmte., 457 U.S. at 431 (emphasis in original). This comports with the Village's representation that "Plaintiffs have an opportunity in the Village Court to seek the dismissal of the Village Court Proceeding[, i.e., the Dangerous Dog Proceeding,] and/or assert any defenses that they believe they have." [5] (Reply at 14 (citing Spargo, 351 F.3d at 77).) Accord Toczek v. Alvord, -- F. App'x --, 2021 WL 48153, at *2 (2d Cir. Jan. 6, 2021)(holding abstention is required where plaintiff "has 'made no showing that the [s]tate's laws, procedures, or practices would prevent [her] effective

---

[5]  Similarly, there is nothing indicating that Plaintiffs will be precluded from raising other challenges or defenses to the subject Dangerous Dog Proceeding in the Village Court. (See, e.g., Opp'n at 9 (arguing the People lack standing to bring the Dangerous Dog Complaint; citing People ex rel Danishevsky v. Newell, 64 Misc. 3d 608, 103 N.Y.S.3d 772 (Suffolk Cnty. Dist. Ct. 2019)).)

interposition of [her] federal contentions'" (quoting <u>Kirschner v. Klemons</u>, 225 F.3d 227, 235 (2d Cir. 2000))).

**\* \* \***

Having decided this matter on abstention grounds, the Court declines to address the Village's arguments in support of Rule 12(b)(6) dismissal.  <u>See, e.g.</u>, <u>Disability Rights of N.Y.</u>, 916 F.3d at 131 n.1 (citing, <u>inter</u> <u>alia</u>, <u>Ruhrgas AG v. Marathon Oil Co.</u>, 526 U.S. 574, 585 (1999) (reaffirming the inherent flexibility that federal courts exercise "to choose among threshold grounds" for disposing of a case without reaching the merits)).

<u>CONCLUSION</u>

Accordingly, to the extent the Village seeks abstention by this Court, its DISMISSAL MOTION is GRANTED.  The Clerk of Court is directed to close this case.

**SO ORDERED.**

  /s/ JOANNA SEYBERT  
Joanna Seybert, U.S.D.J.

Dated:     March <u>17</u>, 2021  
           Central Islip, New York